NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0548n.06

Case No. 21-3381

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 30, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BRIDAL EXPRESSIONS LLC, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| OWNERS INSURANCE COMPANY, | ) ) | |
| Defendant-Appellee. | ) | |

BEFORE: SUTTON, Chief Judge; STRANCH and BUSH, Circuit Judges.

PER CURIAM. Bridal Expressions, the owner of a bridal salon in Mentor, Ohio, sued its insurance provider to recover for its economic losses from the COVID-19 pandemic. The district court dismissed the claim. We affirm.

I.

Bridal Expressions has operated its "CLE Bride by Expressions" store for nearly twenty years, selling wedding dresses, tuxedos, and other formalwear to the Mentor community and beyond. R.12 at 1. A typical day at the store features families and friends gathered to buy gowns and tuxedos for an upcoming wedding, all facilitated by the store's employees.

The pandemic complicated matters. This store, like many others, had to adapt to government restrictions on the number of people that could be in the store, to masking and spacing

requirements, and above all to the risks of people being infected with the coronavirus and spreading it. In response, Bridal Expressions limited the use of its floorspace and the number of customers it would serve at a given time. The restrictions hurt the store's bottom line.

In the face of these hardships, the store turned to its insurance provider. Bridal Expressions has a "Businessowners Insurance Policy" issued by Michigan-based Owners Insurance Company. R.12-1 at 6. The policy period covers October 2019 to October 2020. One part of the policy, the "Special Property Coverage Form," covers "direct physical loss of or damage to Covered Property" at the store, subject to certain limitations and exclusions. *Id.* at 41. The policy also covers lost "Business Income" and "Extra Expense[s]" during a "period of restoration" caused by a "direct physical loss of or damage to property." *Id.* at 44.

In March 2020, the company submitted a claim to Owners Insurance for its pandemic-related losses. Owners Insurance denied the claim on the ground that there was not direct physical loss of or damage to Covered Property. Bridal Expressions responded with a federal lawsuit on behalf of itself and others similarly situated, alleging breach of contract.

The district court ruled for Owners Insurance. It determined that the policy language didn't cover Bridal Expressions' harms and dismissed the case under Civil Rule 12(b)(6).

## II.

At stake is the meaning of this insurance contract under Ohio law. Ohio courts give contract terms, including those in insurance policies, their conventional meaning. *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 400 (6th Cir. 2021). We give fresh review to a district court's decision on a Rule 12(b)(6) motion to dismiss. *Jasinski v. Tyler*, 729 F.3d 531, 538 (6th Cir. 2013).

All agree that the key phrase—"direct physical loss of or damage to" property—operates as a gatekeeper to Bridal Expressions' recovery. Bridal Expressions primarily argues that the phrase covers the reduced *use* of its property due to capacity limitations and other operational restrictions that it adopted to protect against the spread of the coronavirus, whether required by the government or self-imposed.

Our recent decision in *Santo's Italian Café* forecloses this argument. In that case, a restaurant sued an insurance provider for breach of its commercial insurance contract under Ohio law. 15 F.4th at 400. The relevant insurance policy provision, like this provision, covered "direct physical loss of or damage to" property. *Id.* Reading the policy language in light of its conventional meaning and Ohio caselaw, we rejected the request for coverage. "The restaurant," we reasoned, "has not been tangibly destroyed, whether in part or in full. And the owner has not been tangibly or concretely deprived of any of it." *Id.* at 401. Put another way, a direct physical alteration of the property was needed to show "damage to" it, and some form of complete destruction or dispossession was needed to show "loss of" the property. *Id.*

What was true for the restaurant in *Santo's Italian Café* is true for the bridal shop today. Throughout the coverage period, Bridal Expressions retained possession of its property and could put it to use. The company's inability to use the property in the same way as it did before the pandemic—not unlike the situation faced by restaurants at the time—does not satisfy the policy's language. "A loss of use simply is not the same as a physical loss." *Id.* at 402. Bridal Expressions identifies no reason why the text of this policy requires a different outcome. Because *Santo's Italian Café* is "controlling authority" in this circuit, *Dakota Girls, LLC v. Phila. Indem. Ins. Co.*, No. 21-3245, 2021 WL 5144465, at *2 (6th Cir. Nov. 5, 2021), its holding controls.

One wrinkle remains. Bridal Expressions argues on appeal that "the presence of COVID-19 altered the structure of the air, the physical space, and the property surfaces at" the bridal salon. Appellant's Br. 47. In *Santo's Italian Café*, it is true, we observed that the plaintiff did not allege that the "virus physically and directly altered the property." 15 F.4th at 402.

But an examination of the closest-to-the-point paragraph in the complaint confirms that this distinct theory has not made an appearance today either. In full, the paragraph says that "[t]he presence of COVID-19 caused 'direct physical loss of or damage to' each 'Covered Property' under Plaintiff's policy, and the policies of the other Class members, by impairing and damaging the Covered Property, and causing a necessary suspension of operations during a period of restoration." R.12 at 11.

This allegation does little more than repeat the language of the policy. The key phrase says that the presence of the virus "impair[ed] and damag[ed]" the covered property and "caus[ed]" a suspension of operations. That does not materially add anything to the "use" theory that is at the heart of this complaint. It does not put the insurance company on notice of a distinct theory of coverage by explaining how the virus physically altered property in the store. Confirming the point, the district court never addressed any such theory. For this theory to have traction, the complaint would need to allege at a minimum that the coronavirus was present in the store and materially altered specific property at the time. If that were the theory of coverage, moreover, the complaint presumably would seek coverage for replacing that property and only for the time that property was damaged or lost.

Bridal Expressions points to other paragraphs in the complaint as alleging physical alterations. But these paragraphs merely say in the abstract that the virus could alter physical property somehow, noting how biological agents might render products impure and how the virus

might spread person-to-person through the air and on surfaces. Bridal Expressions never tied those points to its store. The complaint repeatedly says that the company's measures were preventative, not reactive, when it comes to the virus entering the premises. The "possibility" of an event does not suffice to state a claim under Civil Rule 8. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Other courts have rejected such a "threadbare recital[] of" the contract's language combined with "conclusory statements" saying that the coronavirus impaired some unidentified property in some unidentified manner. *Id.* at 663. On these pleadings, nothing allows a court to infer that the virus infiltrated the store and physically altered the property at a given time. *See Dakota Girls, LLC*, 2021 WL 5144465, at \*2 (rejecting the plaintiff's argument that "COVID-19, merely through its supposed presence, was somehow 'damaging surfaces' within its properties" because the plaintiff did not "plead that COVID-19 had materially altered the facilities' condition"); *Selane Prods., Inc. v. Cont'l Cas. Co.*, No. 21-55123, 2021 WL 4496471, at \*1 (9th Cir. Oct. 1, 2021) (rejecting this argument because "even if" the court found it persuasive legally, the plaintiff "did not allege that SARS-Cov-2 was present on its property to cause any damage").

We affirm.